# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY PATLAN, JR., | ) CV F 03 5836 LJO HC |
| Petitioner, | ) ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) |
| A. K. SCRIBNER, Warden, | ) ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |
| Respondent. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated November 10, 2003, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, by order dated May 2, 2004, this case was reassigned to the undersigned for all further proceedings.

# PROCEDURAL HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on December 5, 2000, of second degree robbery in violation of Cal. Penal Code § 211 and assault by means of force likely to produce great bodily injury in violation of Cal. Penal Code § 245(a)(1). See Exhibit 2, Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer"). The jury found true the allegations that Petitioner had personally inflicted great bodily injury within the meaning of Cal. Penal Code § 12022.7(a), causing the offenses to become serious and violent felonies within the meaning of Cal. Penal Code §§ 1192.7(c)(8) and 667.5(c)(8). Id. In a bifurcated proceeding, the trial court found that Petitioner had suffered a prior serious or violent felony within the meaning of Cal. Penal Code §§ 667(b)-(i) and 1170.12(a)-(d), and had suffered a prior serious felony conviction pursuant to Cal. Penal Code § 667(a)(1). Id. Petitioner was sentenced to an aggregate determinate term of 18 years in state prison. Id.

Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"). On August 20, 2002, the 5th DCA issued an unpublished opinion affirming the judgment. Id.

On October 1, 2002, Petitioner filed a petition for review with the California Supreme Court. See Exhibit 3, Answer. On November 18, 2002, the California Supreme Court summarily denied the petition without comment or citation to authority. See Exhibit 4, Answer.

On June 19, 2003, Petitioner filed the instant federal habeas petition in this Court. Petitioner raises one ground for relief: "Petitioner contends there was insufficient evidence to sustain conviction(s) for that of great bodily injury, abridging his Fifth and Fourteenth Amendment rights to the United States Constitution."

On October 16, 2003, Respondent filed an answer to the petition.

On October 27, 2003, Petitioner filed a traverse.

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

**FACTUAL BACKGROUND**

The following factual summary is taken from the opinion of the 5th DCA:

In July 1998, Hawley began living with Michelle Gonzalez (Gonzalez) in her apartment. Gonzalez allowed Hawley to stay with her because he did not have a job or a place to stay, and Gonzalez felt sorry for him. In exchange, Hawley promised to give Gonzalez some money and food stamps and to watch her children. During the time Gonzalez and Hawley shared the apartment, [Petitioner] often called the residence. On occasion, Hawley would not allow [Petitioner] to speak with Gonzalez.

Towards the end of July, Gonzalez asked Hawley to leave the apartment because he was "doing drugs" around her children. A few days later, Hawley asked to pick up his clothes. Gonzalez told Hawley to come by the apartment before [Petitioner] arrived.

At the very end of July, [Petitioner] moved in with Gonzalez. On August 1, 1998, Gonzalez and her children, Gonzalez's sister Angel Reyes and her two children, [Petitioner], and his friend Daniel Garcia were together at the apartment to celebrate Gonzalez's son's birthday.

The next day, on August 2, 1998, [Petitioner] and Garcia woke up at noon and began drinking. Within a period of an hour and a half, Garcia drank six beers and [Petitioner] also became drunk. At approximately 3:30 p.m., Garcia phoned for a taxi. While Garcia waited for the taxi, Hawley arrived and knocked on the front door of the apartment. Reyes answered the door. Hawley told her he did not have all of the money he owed Gonzalez, but that he would like to speak to her and pick up his clothes.

Reyes walked into the bedroom to retrieve Hawley's clothes, and Hawley stepped into the apartment. At that point, [Petitioner] stood up and said to Hawley, "What the fuck do you mean you don't have the money?" [Petitioner] walked toward Hawley, who backed out onto the balcony. Garcia followed [Petitioner] outside onto the balcony. The three argued and fought. Gonzalez and Reyes pleaded with [Petitioner] to leave Hawley alone.

Reyes became frightened for Hawley and tried to break up the fight. Reyes grabbed [Petitioner] by the arm, but he pushed her away. Reyes and Gonzalez went back into the apartment to be with the children.

Garcia grabbed Hawley's arm and removed a bracelet with a ring on it. Either [Petitioner] or Garcia stated, "You are going to give us the gold." [Petitioner] asked Hawley to remove everything from his pockets. Hawley removed $7 in bills, which [Petitioner] grabbed from his hand. [Petitioner] then punched Hawley approximately three or four times in the face with a closed fist and both hands. Hawley remembers [Petitioner] "socking" him in the head and hitting him very hard. Hawley did not fight back but tried only to protect himself. [Petitioner] and Garcia continued to attack Hawley. Hawley fell to his knees and blood began to flow from his face.

Reyes saw Hawley bleeding from his head and knew he was scared. She saw a lot of blood and began to get scared herself. Reyes then jumped in front of [Petitioner] and told Hawley to run. Hawley stood up and ran, leaving a trail of blood on the balcony, cement, and grass. Everyone went back into the apartment. [Petitioner] and Garcia intended to sell the bracelet and ring, which they placed on top of the counter. The police arrived shortly thereafter.

Officer Roland Rico was on patrol when Hawley approached his vehicle. Hawley was bleeding profusely from a laceration above his eye. Officer Rico placed Hawley in the back

seat of the patrol car. After a brief investigation, Garcia and [Petitioner] were taken into custody.

Hawley was taken to Valley Medical Center where his wound was cleaned and he received five stitches. The stitches resulted in a half-inch scar on the side of his face. Hawley was kept at the hospital overnight for observation.

James Farrell, an investigator for John Barker and Associates, testified he interviewed Hawley, who pointed to the left side of his face when asked where he was injured. Photographic evidence revealed Hawley had been injured on the right side of his face. On cross-examination, Farrell testified Hawley had gestured toward his forehead area.

See pp. 3-5, Exhibit 2, Answer.

## DISCUSSION

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

### II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

1  Petitioner has the burden of establishing that the decision of the state court is contrary to or
2  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
3  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
4  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
5  decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th
6  Cir.1999).

7  AEDPA requires that we give considerable deference to state court decisions. The state
8  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
9  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537
10 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petitioner's Claim

In his sole ground for relief, Petitioner claims the evidence was insufficient to support a finding that Petitioner inflicted great bodily injury to the victim.  Petitioner argues that the victim's injuries were trivial, minor, or moderate.  He contends that in order to qualify as great bodily injury, Petitioner's "wounds must require extensive suturing (stitches)." See p. 4, Petition.  He also contends that this Court must make a *de novo* review of the language of the statute to determine the elements of the offense. Respondent argues that the evidence was more than sufficient, that Petitioner's interpretation of the standard of review is flawed, and there is no reason to disturb the state disposition.

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979).  See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992).  Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Sufficiency claims are judged by the elements defined by state law. Jackson, 443 U.S. at 324

1  n. 16. This Court must presume the correctness of the state court's factual findings. 28

2  U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of

3  correctness applies to state appellate determinations of fact as well as those of the state trial courts.

4  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not

5  apply to state court determinations of legal questions or mixed questions of law and fact, the facts as

6  found by the state court underlying those determinations are entitled to the presumption.  Sumner v.

7  Mata, 455 U.S. 539, 597 (1981).

8       This claim was first presented on direct appeal to the 5th DCA.  On August 20, 2002, the 5th

9  DCA denied the claim in a reasoned opinion.  See Exhibit 2, Answer.  On October 1, 2002,

10  Petitioner raised the claim in a petition for review before the California Supreme Court. See Exhibit

11  3, Answer.  The petition was summarily denied on November 18, 2002, without comment or citation

12  of authority. See Exhibit 4, Answer.  The California Supreme Court, by its "silent order" denying

13  review of the 5th DCA's decision, is presumed to have denied the claims presented for the same

14  reasons stated in the opinion of the 5th DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

15       In reviewing Petitioner's claim, the 5th DCA first noted that under California law, "great

16  bodily injury" is defined as "a significant or substantial injury." Cal. Penal Code § 12022.7(f). The

17  Court noted that, historically, "it was thought to require a finding that the victim suffered permanent,

18  prolonged or protracted disfigurement, impairment, or loss of bodily function." See p. 7, Exhibit 2,

19  Answer. However, in People v. Escobar, 3 Cal.4th 740, 749-750 (1992), the California Supreme

20  Court expressly rejected such a requirement. The California Supreme Court did not attempt to define

21  the concept further, but noted that the injury must be beyond that inherent in the offense itself.

22  Escobar, 3 Cal.4th at 746-747. The 5th DCA then quoted Escobar as follows:

23      It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. "Whether the harm resulting to the victim . . . constitutes great bodily injury is a
24      question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might
25      reasonably be reconciled with a contrary finding." [Citation.]

26  Id. The 5th DCA concluded that there was sufficient evidence to support the jury's finding of great

27  bodily injury.

28       In reviewing the evidence in the light most favorable to the state court judgment, it is clear to

this Court that any rational trier of fact could have made the finding that Petitioner inflicted great bodily injury. As noted by Respondent, injury is not an element of robbery. Robbery only requires that the taking be done through force or fear. Cal. Penal Code § 211.  Injury is also not an element of assault. The crime of assault is concerned with the type of force used: "with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." Cal. Penal Code § 245(a)(1). Use of force is a required element, but actual injury is not. See People v. Covino, 100 Cal.App.3d 660, 667 (1980). Therefore, serious injury is not inherent in the offenses.

      Therefore, under California law the jury was left to decide whether the injuries sustained by the victim constituted great bodily injury, i.e., whether the injury was significant or substantial. The evidence shows that Petitioner punched the victim several times in the face with a closed fist. (RT 487.)[2]  The victim then fell down and blood started to come from his face. (RT 488.) When the victim ran from Petitioner, he left a trail of blood on the ground. (RT 488.) As a result of the beating, the victim sustained a cut to the side of his face which bled profusely. (RT 365-66.) The victim also testified that he blacked out for several seconds. (RT 366.) He was transported to the hospital where his wounds were cleaned, and the cut required five stitches to close. (RT 366, 373.) He was kept in the hospital for approximately 16 hours for observation. (RT 373.) The victim sustained a half-inch scar to the side of his face. (RT 365-66.) In light of the evidence, the jury could have found Petitioner inflicted great bodily injury beyond a reasonable doubt.

      Accordingly, the state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did the state court resolution result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be denied.

///
///
///

---

[2] "RT" refers to the Reporter's Transcript on Appeal lodged with this Court on October 16, 2003.

# ORDER

Accordingly, the petition for writ of habeas corpus is hereby DENIED with prejudice, and the Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:     June 8, 2005**                                 /s/ Lawrence J. O'Neill
b9ed48                                                                   UNITED STATES MAGISTRATE JUDGE